NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221069-U

NO. 4-22-1069

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 5, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* E.H., a Minor; | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 19JA238 |
| v. | ) | |
| Laiveil H., | ) | Honorable |
| Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Cavanagh and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's fitness and best interest determinations were not against the
manifest weight of the evidence, and respondent forfeited any argument that the
court erred in denying his request for a continuance.

¶ 2     Respondent, Laiveil H., appeals the trial court's judgment finding him to be an

unfit parent and terminating his parental rights as to his minor child, E.H. (born October 22,

2014). On appeal, respondent argues the court (1) denied him the effective assistance of counsel

by denying his request for a continuance on the day of the fitness hearing, (2) erred in finding

him unfit, and (3) erred in terminating his parental rights. We affirm.

¶ 3                              I. BACKGROUND

¶ 4              A. The Neglect Petition, Adjudication, and Disposition

¶ 5       On June 6, 2019, the State filed a petition for adjudication of wardship with respect to E.H., alleging she was neglected pursuant to section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2018)). Each of the petition's three counts related to E.H.'s mother, who is not a party to the instant appeal. In January 2020, the State amended the petition to include a fourth count, also related to E.H.'s mother. In February 2020, following an adjudicatory hearing, the court found the State had proven three of the four counts by a preponderance of the evidence and entered an order adjudicating E.H. neglected. In July 2020, following a dispositional hearing, the court entered an order finding respondent unfit to care for E.H. and making her a ward of the court.

¶ 6                        B. The Petition for Termination of Parental Rights

¶ 7       On September 22, 2022, the State filed a petition seeking a finding of respondent's unfitness and termination of his parental rights as to E.H. The State alleged respondent was an unfit parent within the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)) because he failed to (1) protect E.H. from conditions within the environment injurious to her welfare (*id.* § 1(D)(g)) (count I), (2) make reasonable efforts to correct the conditions that led to the minor's removal during any nine-month period from April 7, 2021, to August 11, 2022 (*id.* § 1(D)(m)(i)) (count II), and (3) make reasonable progress toward E.H.'s return during any nine-month period from April 7, 2021, to August 11, 2022 (*id.* § 1(D)(m)(ii)) (count III).

¶ 8                              1. *The Fitness Hearing*

¶ 9       The trial court conducted a fitness hearing on October 4, 2022, and November 2, 2022. At the outset, counsel for respondent—who was appointed on August 11, 2022, and first appeared in court on September 22, 2022—requested a continuance "for more time to prepare

with [respondent] to prepare a better hearing for this termination of parental rights." The court denied counsel's request, stating:

> "THE COURT: Well, I'm assuming that counsel had access to all the discovery which contains the information. At some point this morning I'll be taking a recess and you'll have a chance to confer with [respondent] as to whether he wishes to testify and what he'd like to say. So I'll deny that motion."

¶ 10 Upon the State's request and over respondent's objection, the trial court admitted numerous exhibits into evidence, including four "indicated packets" and a group exhibit consisting of "certified copies from [respondent's] criminal cases." The group exhibit was comprised of (1) a bill of indictment charging respondent with unlawful use of a weapon by a felon in Winnebago County case No. 22-CF-1490; (2) a bill of indictment charging respondent with violation of an order of protection in Winnebago County case No. 21-CF-662; (3) a certified copy of respondent's guilty plea in case No. 21-CF-662; (4) a criminal complaint charging respondent with domestic battery in Winnebago County case No. 19-CM-1075; and (5) a certified copy of respondent's guilty plea in case No. 19-CM-1075.

¶ 11 The State called as its first witness Samantha Hagerman, E.H.'s caseworker since October 2020. Hagerman explained that E.H.'s case was opened because "[t]here was a fight between [E.H.'s mother] and another person. *** [E.H.'s mother] went to jail and there was nobody there for [E.H.]." Hagerman testified an integrated assessment was completed to determine which services needed to be included in respondent's service plan. Based on the integrated assessment, the following services were added to the plan: "Mental health, domestic violence, substance abuse, parenting slash visitation, and cooperation with the agency."

Hagerman identified two integrated assessments and six service plans, all of which were admitted into evidence.

¶ 12　　　　Hagerman testified respondent became involved with the case in late October or early November 2020. Since that time, he had consistently maintained contact with the agency. Hagerman testified that as part of his mental health services, the agency asked respondent to complete a mental health assessment. Respondent told Hagerman he had completed the assessment, but Hagerman never received proof of its completion. Hagerman testified she set up several meetings to discuss the assessment with respondent and obtain proof of its completion. Respondent did not show up to any of the meetings.

¶ 13　　　　Hagerman further testified that the agency had domestic violence concerns regarding respondent. According to the integrated assessment, E.H.'s mother and respondent "had been in over fifty 'domestic arguments' and three to four physical altercations, including [respondent] choking [E.H.'s mother] in the presence of [E.H.] while in a vehicle." Hagerman testified E.H.'s mother had an order of protection against respondent and he had "violated that OP multiple times throughout the life of the case." As part of his required domestic violence services, respondent had been referred to the Partner Abuse Intervention Program (PAIP), a 26-week program that consisted of one group meeting per week. Respondent never completed PAIP. He first began the program in January 2021 but was arrested in April 2021 for violating the order of protection. Respondent began the program again in December 2021 but was arrested in June 2022 for "possession of a weapon and cannabis" and discharged from the program with "three sessions left." He would have had no additional domestic violence services had he completed PAIP.

¶ 14　　　　　Hagerman testified respondent also had to complete substance abuse services. Respondent was required to complete a substance abuse assessment, comply with its recommendations, and complete drug screenings. According to Hagerman, when respondent first contacted the agency in October or November 2020, he was on probation, had completed a substance abuse assessment and an intensive outpatient program, and was being drug tested as a condition of his probation. Respondent tested positive for marijuana in September 2021 and had to retake the intensive outpatient program, which he completed in May 2022. Respondent tested positive for marijuana multiple times between September 2021 and April 2022, and he was arrested for possession of marijuana in June 2022.

¶ 15　　　　　Hagerman testified the agency's only concern with respondent's parenting was his "inconsistency." Hagerman indicated that he acted appropriately during his visits with E.H. When asked whether the agency had concerns about respondent's ability to safely care for E.H., Hagerman answered, "[T]he agency has concerns for him to safely parent [E.H.] due to his last arrest with the possession of a gun and his continual use of marijuana, and also the agency has safety concerns about the [order of protection] being violated multiple times throughout the case with [E.H.'s mother]."

¶ 16　　　　　On cross-examination, Hagerman acknowledged that E.H.'s mother informed her that respondent violated the order of protection because "she felt like she was in danger from a different paramour" and asked him to help her. Hagerman also indicated she was aware respondent had completed the "Thriving Fathers program" and "Thinking for a Change."

¶ 17　　　　　On November 2, 2022, the trial court conducted the second and final day of the fitness hearing. Respondent called Hagerman as his only witness. Hagerman's testimony essentially mirrored her testimony from the State's case-in-chief.

¶ 18 Following the presentation of the evidence and the arguments of the parties, the trial court found the State had proven all three counts alleged in the termination petition by clear and convincing evidence. The court stated as follows:

"THE COURT: As to [respondent], per the caseworker, again [respondent] was to attend mental health services, domestic violence services, substance abuse treatment, and parenting. *** [E.H.'s mother], excuse me, secured an order of protection against [respondent] during this case. He twice attempted PAIP counseling and twice failed to complete PAIP counseling. This was a critical service for [respondent], which he did not make progress. There was, as I mentioned, the order of protection which was violated on multiple occasions. He had positive drug drops during the course of the case. He did complete an intensive outpatient treatment program but then was re-referred because of, again, drug drops and an arrest involving narcotics. He did not satisfactorily complete the mental health services."

¶ 19                    2. *The Best Interest Hearing*

¶ 20 The trial court conducted a best interest hearing on November 30, 2022. At the State's request, the court took judicial notice of the record of the fitness proceedings and the best interest report prepared by Hagerman and submitted in anticipation of the hearing. The State did not present any additional evidence.

¶ 21 According to the best interest report, E.H. had been in the same placement since her case was opened. One of her siblings had been adopted by the foster parents, who provided for all of her basic needs and were willing to foster a relationship between E.H. and another sibling, who was placed in a separate home. E.H. called her foster parents "mom" and "dad" and

had told them multiple times that she wished to stay with them. E.H. had been in the same school since being placed with her foster parents and had been able to make friends. The foster parents expressed their desire to adopt E.H.

¶ 22    Respondent did not present any evidence at the best interest hearing.

¶ 23    Following the presentation of the evidence and the arguments of the parties, the court found the State had proven that termination of respondent's parental rights was in E.H.'s best interest by a preponderance of the evidence. The trial court stated it did not "find any evidence that reunification with [respondent] is within the reasonable, foreseeable future."

¶ 24    This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, respondent argues the trial court (1) denied him the effective assistance of counsel by denying his request for a continuance on the day of the fitness hearing, (2) erred in finding him unfit, and (3) erred in terminating his parental rights.

¶ 27                        A. The Request for a Continuance

¶ 28    First, respondent argues "the trial court denied [him the] effective assistance of counsel by denying [his] motion for a continuance on the day of the fitness hearing." Respondent points out that counsel did not make his initial appearance until September 22, 2022, the same day the State filed the termination petition and only 12 days before the fitness hearing commenced on October 4.

¶ 29    We find respondent has forfeited this argument by failing to comply with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). In his brief, respondent does not cite any authority in support of his contention that a trial court's denial of a motion to continue may serve as a basis for a party's claim he was denied the right to the effective assistance of counsel. The

- 7 -

only case respondent has cited is *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 12. He cites this case for the proposition that the statutory right to counsel found in the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2020)) "also involves a constitutional right to effective counsel in abuse and neglect cases." *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 12. However, *Abel C.* does not involve a claim that a trial court denied an individual's right to the effective assistance of counsel, and it does not involve the denial of a motion to continue. Respondent has not supplied this court with either caselaw or statutory authority establishing that the denial of a motion to continue may serve as the basis for finding a party's right to effective assistance of counsel has been denied. Because respondent has failed to cite any authority in support of his argument, he has forfeited review of it on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on").

¶ 30                                    B. The Fitness Determination

¶ 31           Next, respondent argues the trial court erred in finding him to be an unfit parent. In relevant part, respondent contends the court erred in finding he had failed to make reasonable progress toward E.H.'s return during any nine-month period from April 7, 2021, to August 11, 2022, "because [he] substantially completed [the] domestic violence services requested of him and the other requested services were not necessary."

¶ 32           In a proceeding to terminate parental rights, the State must first prove by clear and convincing evidence that the parent is unfit. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). In making such a determination, the trial court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re D.D.*, 196 Ill. 2d 405, 417 (2001). "A parent's rights may be

terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). "A reviewing court will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *In re A.L.*, 409 Ill. App. 3d 492, 500 (2011).

¶ 33      Under the Adoption Act, an unfit parent includes any parent who fails to make reasonable progress toward his or her child's return during any nine-month period following the neglect adjudication. 750 ILCS 50/1(D)(m)(ii) (West 2020). In addressing section 1(D)(m) of the Adoption Act, the supreme court has stated as follows:

> "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

This court has described reasonable progress as "an 'objective standard,' " which exists "when 'the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody.' " (Emphasis in original.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)).

¶ 34      Here, we find the trial court's fitness determination was not against the manifest weight of the evidence. Hagerman testified, and the service plans corroborated, that respondent

was required to engage in and complete the following services: "Mental health, domestic violence, substance abuse, parenting slash visitation, and cooperation with the agency." Although respondent maintained satisfactory contact with the agency and acted appropriately at his visits with E.H., the evidence presented at the fitness hearing demonstrated respondent did not make reasonable progress in relation to his mental health, domestic violence, or substance abuse services. With respect to the mental health services, respondent was required to complete a mental health assessment. Hagerman testified respondent told her he had completed the assessment, but she never received a certificate verifying as much. As for the domestic violence services, respondent was required to complete PAIP, a 26-week domestic violence program. Respondent initially enrolled in PAIP in January 2021 but could not complete the program because he was arrested for violating an order of protection in April 2021. He reenrolled in the program in December 2021 but was discharged for a second time following his arrest for "possession of a weapon and cannabis" in June 2022. Additionally, Hagerman testified respondent violated the order of protection against him "multiple times throughout the life of the case." Lastly, respondent was required to complete a substance abuse assessment and maintain sobriety. He completed the assessment as a condition of his probation but tested positive for marijuana numerous times. Based on this evidence, we cannot say the court's unfitness finding was against the manifest weight of the evidence.

¶ 35    We note respondent argues the State presented no evidence to demonstrate it was necessary for him to complete the mental health or substance abuse services and, therefore, his failure to complete those services cannot be used as a basis to find he did not make reasonable progress. See, *e.g.*, *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 101 ("[T]he services refused must be services that the evidence demonstrates have some connection to the problems in the

- 10 -

home."). We find it unnecessary to address respondent's argument. Even assuming, *arguendo*, respondent is correct, we would nonetheless affirm the trial court's judgment based on his inability to make any progress toward completing the domestic violence services. As the court noted in announcing its decision, the domestic violence services were "critical." Nonetheless, respondent was unsuccessfully discharged from PAIP on two separate occasions due to two separate arrests. Moreover, he violated the order of protection against him "multiple times throughout the life of the case." Thus, based on his failure to complete the domestic violence services alone, respondent was no closer to reunification on August 11, 2022, than he was when the case was opened. Accordingly, we reject his argument and need not address his additional arguments related to the court's fitness determination. See *Gwynne P.*, 215 Ill. 2d at 349 ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence.").

¶ 36                             C. The Best Interest Determination

¶ 37            Lastly, respondent argues the trial court erred in finding termination of his parental rights was in E.H.'s best interest. We will not reverse a best interest determination absent a finding it was against the manifest weight of the evidence, which occurs "only if the facts clearly demonstrate that the court should have reached the opposite result." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009).

¶ 38            At the best interest stage of termination proceedings, the trial court must determine whether the State has proven that termination of the respondent's parental rights is in the minor's best interest by a preponderance of the evidence. *Id.*; 705 ILCS 405/2-29(2) (West 2020). The focus shifts from the parent to the child, and the issue is "whether, in light of the child's needs, parental rights should be terminated." (Emphasis omitted.) *In re D.T.*, 212 Ill. 2d

347, 364 (2004). Thus, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* Section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)) lists the best interest factors for the court to consider, in the context of the minor's age and developmental needs, when making its best interest determination: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks associated with substitute care; and (10) the preferences of the persons available to care for the child.

¶ 39　　　　Here, we find the trial court's best interest determination was not against the manifest weight of the evidence. According to the best interest report, E.H. had been in the same placement since her case was opened, and one of her siblings lived in the same home. Hagerman indicated in her report that the foster parents provided for all of E.H.'s needs and wanted to foster a relationship between her and another of her siblings, who lived in a different home. E.H. had been attending the same school for three years and had made friends at the school. E.H. had expressed to the foster parents on multiple occasions that she wished to stay with them, and the foster parents stated their desire to adopt her. Based on this evidence, we cannot say the court's best interest determination was against the manifest weight of the evidence.

¶ 40　　　　　　　　　　　　　III. CONCLUSION

¶ 41　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 42　　　　Affirmed.